Next case is People of the State of Illinois v. Bethel. And we have Mr. Burke and Mr. Daly. Mr. Burke, when you're ready, would you proceed with your argument? Thank you, Your Honor. May it please the Court, my name is Robert Burke. I represent the defendant, Robert Bethel, requesting the Court to remand the case to Clinton County for Stage 2 post-conviction proceedings. It came up after Stage 1 post-conviction proceedings. Your Honor, when a person pleads guilty to a term of probation, they know that there's a statute that says this probation may become tolled, and while it's tolled, then you're still on probation. And when a person pleads guilty to that, they do that knowingly and voluntarily, that's the law. When a person pleads guilty to a prison sentence for the term of MSR, mandatory supervised release, they know that part of the statute is that that can be revoked, and then while there's a petition pending to revoke it, the running of the MSR is tolled. They know that, and plead under those circumstances knowingly and voluntarily. The record shows that my client's going to turn 54 next week, and I don't bring that up so we can wish him a happy birthday, I bring it up to illustrate a point. When he pleaded guilty, he knew that if he was well-behaved in prison, that he would be released from prison in September of 2009 when he was 51 1⁄2 years old. He was well-behaved in prison, and he was released from prison in September of 2009 when he was 51 1⁄2 years old. He also knew that if he was well-behaved on parole or MSR, then he would be released from MSR in September of 2012, which was when he'll be 54 1⁄2 years old. He's about to turn 54. There is no end in sight to his MSR. It's tolled while he's still considered a sexually violent person. That is not what he agreed to. He did not knowingly and voluntarily agree to continue on MSR past his 54 1⁄2 birthday. The MSR to which he did agree could be revoked if there was a petition filed saying that he had violated MSR. Under the law on MSR, that means that it stopped running, and the court, because the court retains jurisdiction of him while he's on MSR, the court has jurisdiction over him, and while he's on MSR, the Department of Corrections has custody of him, constructive custody of him. If then there's a second violation of his MSR, second alleged violation of his MSR, after the term would have already ended, then he can have his MSR revoked for that, while his original MSR was tolled because of a first violation. Likewise with probation. With probation, if there's a petition saying you've violated your probation, the probation is tolled, and then while the probation is tolled, even after the probation would have otherwise ended, I cited a case in my reply brief on this, if somebody violates their probation after, let's say it's a three-year probation, if they violate their probation while it's tolled, but 3 1⁄2 years after they plead guilty, then they can have their probation revoked for something that happened after that three years because it happened while their probation was tolled. What would happen if he violated his MSR now, while he's in custody as a sexually violent person? Would then they revoke his MSR, or is it being tolled? Well, I hadn't actually considered that. That's a very good question, Your Honor. I would think that they could revoke it. If he's at the sexual treatment facility in Russia, and as far as I know is well-behaved there, but let's say that he did something, smuggled in contraband, or assaulted someone there, or the kind of thing that gets your MSR revoked, then I think that the Department of Corrections could say, we're revoking your MSR, it's no longer tolled, come back here to prison. You're going to serve some more time here in prison because you haven't behaved yourself. Now that's what I think would happen in that situation. You wouldn't be here arguing that his time was being tolled and they couldn't revoke his MSR. You would think that that would be the, but who knows what we'd do under those circumstances. Let's forget that. So I believe that when he said, I did not knowingly and voluntarily plead guilty to this, that he stated the gist of a claim, that it should go back to have an attorney appointed to represent him to file an amended post-conviction petition. Are there any other questions, Your Honor? No. Thank you. Thank you. Mr. Daly. Good morning, Your Honor. May it please the Court, the Counsel. I want to take a preliminary matter first here. The attorney who originally briefed this case, Neha Sharma, who has now moved on to Greener Pastures with the County State's Attorney's Office, was the one who wrote this brief. I was assigned the case. I've read the record. I've had the opportunity to review the arguments. There's some measure of novelty to the issues being raised here. There is one issue I believe that really needs to be addressed in the briefing process relating to the defendant's standing to file a post-conviction petition under the facts of this case. I spoke with Mr. Burke earlier today. I indicated that I'm willing to orally move for leave of this Court to file a supplemental argument in this case. He's indicated he has no objection to that. I don't know how this works procedurally with this Court, whether you want me to follow it up with a written motion. In the past, I think we've required a written motion, and then we can follow it up with an order. But if that would indicate that both of you, if you do not have an objection, would you include it in the motion? I would put that in the motion, and I'd probably file it contemporaneously with the argument. And then you'd want a period of time to respond? Just a regular briefing. Regular? Okay. We'll include that in any order. We'll just reply to the briefing. Got it. Reflect. That being the case, I made that record just so the Court doesn't issue a decision prior to the time that I would file within an ordinary briefing time frame. I thank you. Now, this case comes here on a post-conviction petition where it's alleged, there's a really kind of standard due process argument that I didn't know. At the time I pled this guilty, I agreed to do X number of years, and there would be a three-year period of MSR. I thought I had known that there would be this possibility that the State could bring a sexually violent persons act petition, and that that might, you know, in the defendant's context here, extend or elongate the period of MSR. I would never have pled guilty to that in the first place. Now, it's noted, of course, that that statute did not exist at the time the defendant pled guilty in 1989, 1990. This relevant statute was enacted in 2007. The circuit court's approach to this was, well, all right, what is the due process implication if this statute had been in existence at the time? Would it have made a difference? The court's finding, and the finding of that I believe was correct, is that because the introduction of the sexually violent persons act was a collateral consequence of the plea and not a direct consequence, the defendant didn't need to be told of this at the time that he pled guilty in this case. Of course, you know, it's our position, of course, that there's a three-year MSR, and it's always going to be a three-year MSR. There's no elongation. But the court took, I think, even a more refined legal approach and said that your due process argument that you need to be told of this at the time of your plea is not valid because it's a collateral consequence of the plea, and there's no requirement that the court, or in light of the deed, I suppose I should argue here, and I won't second, that counsel needs to tell you of that. Would it be to tell you of that either? I find a really good case on this. There's one side of the brief called People v. Hughes. It's a second district case, and Ms. Shanahan briefed it up there and did a superb job. And what that is, of course, a Padilla decision, which really the issue was whether counsel under Padilla has the obligation to inform the client of the fact that he could be, as a result of his plea, involuntarily committed under the Sexually Endangered Persons Act. The court ultimately came to the conclusion that, unlike deportation, which is a U.S. Supreme Court decision under Padilla, it is not a definite circumstance that the state would seek to have someone involuntarily committed under that act, and that was a critical distinction to court's view. I know, parenthetically, that the Supreme Court, although the Supreme Court's granted leave to appeal on that, so I had that cautionary statement. But I think that, based upon that legal analysis and its application here, I think it's extremely relevant. The state is the one that elects, within the statutory timeframe, to bring the Sexually Violent Persons Act. It's not a for-sure thing that's going to happen. The state has the option whether to do so or not, much as it did in Hughes, whether to bring the Sexually Dangerous Persons Act. If the Second District found that there was not the sustaining obligation under Padilla for counsel to inform a client of this, and I think that that legal premise applies equally here with regards to whether the court or counsel had the obligation to inform the defendant. Therefore, we get back to the fact that it is a collateral consequence, and there's no obligation, as the circuit court found here, for the defendant to be informed of this. That being the case, the plea was known and voluntary, and the defendant's petition had no basis in law, which I believe is the Hodges standard now for first-stage, post-conviction petitions, and was probably dismissed. I do, however, want to talk about Torm. And I want to start, I guess, with the defendant's reply, because it raises an interesting issue. The defendant's, I guess, the thesis is that the MSR period in the guise of its tolling nonetheless still applies to the defendant and sort of runs along with the Sexually Violent Persons Act commitment. He cites a couple of cases which discuss probation, petitions to revoke probation, which is an interesting analogy where the, if the defendant's on probation and the state files a petition to revoke by law, by operation of law, the probationary period is tolled during the pendency of the petition to revoke. And the purpose of that, the legislative purpose of that is to ensure the circuit court retains jurisdiction to rule upon that petition to revoke and not get lost once, say, you know, your 24 months of probation expires. It kind of comes down to, I guess, I want to talk about in view of that, because there's an interesting thought process going on there, is what is the meaning of tolling? In its brief, the state has defined tolling from Black Saw Dictionary as to stop or to abate. In the defendant's cases, the probationary period stopped. Another example I thought of as I was reading through this is the speak-try. The state has to try someone within 120 days. The running of the speedy trial term is tolled, using the precise language the defendant points out here, if something happens that, let's say, is not, is the defendant files a motion to suppress or something like that. The 120 days doesn't go away. The state still is obligated to try the defendant within 120 days attributable to it, but that time clock, I believe, and that's language the courts use, stops. Okay, and that's a consistent concept here. Now, I want to go back to the facts of this case. Here's what happened. The defendant was in prison, in the physical custody of prison, when the state filed its sexually violent persons petition. Okay? He had not started on his target. He was still in the custody of the Department of Corrections. By statute, the MSR period is tolled once that petition is filed. Now, under the statute, the state has certain time limits in which it has to file. It has to file, I believe, within 90 days of the defendant's physical discharge from prison or within the first 30 days of parole or supervised release or however you want to call it. I believe, as a matter of fact, if the defendant has a copy of the statute in his briefing, he can look at it. So, you know, there is an issue, I suppose, if we want to analogize defendant's probation revocation cases to this with regards to what is the effect of the tolling provision. The problem is that that's not the situation we have factually in this case. Defendant's MSR period is never started. If we are to give literal meaning to the terminology of tolling the MSR period, that means it's stopped. It's never started. You know, there's a weird sort of metaphysical question of how does one start something that doesn't stop something that has never started. But I think we can all agree on the fact that it's never going to start because the defendant has never started or been placed upon the jurisdiction, if you want to call it that, of MSR. So I think for this Court to kind of reach this issue of, well, gee, what happens if we're during the MSR period? How does that affect the question that Justice Donovan brought up? You know, what can the state do if he's on MSR? He's in, you know, civil custody of the Department of Corrections and does something that would theoretically violate his MSR. That is a hypothetical that would require an advisory opinion from this Court, I think, under different facts that we don't have here. Here, under this defendant, his due process considerations, there's no violation. He has never started his MSR. By the plain language of the statute, he'll have three years of MSR. Once he's done, he is right now, I looked it up before I came, he is in the Department of Human Services. And the facts weren't clear on that, but it appears that he was civilly committed under the Sexually Violent Persons Act. So I think that for this Court, it has to narrow itself to the facts of this case and understand that because the defendant never actually got on MSR, there's no possibility of some question about how the Court's jurisdiction or the Department of Corrections' jurisdiction to revoke MSR and put him back in prison if it takes place. He's not on MSR. So there's no theoretical or realistic probability of him violating that while he's still within the confines of the Sexually Violent Persons Commitment. Does the Court have any questions? Justice Donovan, do you have any questions? Should we be deciding this at this point, and he may never be released from the Department of Human Services? That's very possible. I mean, we have people that seem to stay for untold periods of time. This may be deciding an issue that may never – and judges are famous for never deciding anything until we have to. I guess in a way – And has – Is this a right? Sorry. Right, right. That's an interesting question, but I think that the answer to that is no, because really the narrow issue here is whether or not the defendant's due process rights were violated as a result of the hidden options by the Court. I mean, we're sort of straight in kind of constitutional theorizing here, and while I love doing that, this is not really the case for him. Does the Court have any questions? No. Justice Chapman's deep in thought. Well, I'm just thinking he's obviously going to have at least one day more than his MSR probably. You know, it's – Well, I mean, he's still in prison when the state filed it. So, I mean, my understanding is essentially there's that – there's a kind of transition, you know, transitory, if you will, from prison to MSR, however that is administratively done by the Department of Corrections. So, I don't know. Is one day more or not? I don't see that myself personally. I just see that he may – I think that the symptom in the case is once the physical imprisonment is ended. I mean, I think that was always the concept of the legislature when they enacted it, and that's why he said he's not in prison. Now, that's not to say that this issue that we have here may not arise in a different context. Like I said, the state is allowed to file a petition while the defendant's on MSR. So, I'm not sort of denigrating any argument raised here. Mr. Burke did a great job. I just don't think that this is the case for this Court to decide. Okay. Thank you, Your Honor. Thank you. Any rebuttal? Yes, Your Honor. May it please the Court. First of all, I want to confirm that, yes, I agreed with Mr. Daley to do supplemental briefing on the standing issue. And if the Court wants a moral argument on that, I'm willing to do that as well. I think that if the state's supplemental brief, then I'll file a supplemental reply brief within the normal time, I suppose. Okay. And he'll be filing the motion. First of all, I wanted to address whether or not a sexually violent person petition is collateral to a prison sentence. It is collateral to a prison sentence. We've always said it's collateral to a prison sentence. Hughes, cited in the brief and cited today, says that an SVP action is collateral to the criminal action. Fine. We agree with that. What we're saying is the MSR is a portion of the sentence. We're not attacking the SVP. That can be done in the civil case in Clinton County. We're saying there's a problem with the MSR, which is not collateral. That's a part of the sentence. Now, in the state's brief, they didn't address the speedy trial thing, so it's kind of caught in the hop here. But I would say this. First of all, I'm not for sure that in the speedy trial statute it actually uses the word toll. I think that it says that it should be brought to trial excluding any delay caused by the defendant. But even if it does use it, I think toll may be the initial clause, 725-5-103-6, I think. But even if it isn't the statute, what we have here, we don't have to analogize to what the speedy trial statute says. We have the MSR statute. The MSR statute says it will toll if there's a petition alleging a violation of the MSR. You'll have to look to how some other non-MSR, non-probation statute is interpreted. We know how this is interpreted, the MSR statute. I suppose the state's argument is that there is a mystical point in time when the prison sentence is ending, the MSR is beginning, and the MSR is tolled under the operation of the SVP statute. That never actually begins. But I think that all that is beside the point. He's still under the jurisdiction of the court. He's still under the custody of DOC even though he's confined in Rushville. I think what actually happens is they leave the prison, they get in a van, and the van drives them straight to Rushville. I think that's how it happens. And I agree with Lerner, the opposing counsel, that it should be decided now. He's attacking his original guilty plea from 1990 and the one from 1991. So he would like to get out of that guilty plea as soon as this court remands it for further proceedings and the court below agrees with us and grants it relief. Are there any other questions, Your Honor? No. Thank you very much. Thanks to both of you for your briefs and argument. We'll provide you with a decision as early as possible.